By the Court. Bosworth, J.
The question argued at the general term by the counsel of all the parties, as being the principal one arising in the cause, is this : Can a party who has been fraudulently induced to sell and deliver goods by means of false pretences, indictable under the revised statutes, reclaim them from one who has bond fide bought and obtained possession of them from the fraudulent vendee %
The plaintiff’s counsel insists, that when a party is deprived of his goods by acts amounting to a felony at common law, his title cannot be divested by a sale to a bond fide purchaser. This is not denied. But he also insists, that the revised statutes have made the obtaining of goods by false pretences a felony, and that it follows that the general rules of law applicable to the rights of an owner of property feloniously taken, are applicable with equal force to property taken from him by false *386 • pretences, indictable by the revised statutes (14 Wend. 31, 35; 3 Barb. S. C. R. 20, 29, 30; 2d Ad. & Ellis, 495-98-99).
The defendants concede that a party who has been deprived of his property by acts amounting to a felony at common law, may reclaim them from one who has bond fide bought them from the felon. But they insist, that when the owner has delivered them to a third person, intending, at the time of the delivery, to part with his title to such person, though he may have been induced to deliver them with such intent by fraud or false pretences, he cannot reclaim them from one who may have bond fide bought them from the person to whom they were so delivered. That such was and is the well settled rule, unless it has been altered by 2 R. S.. 677, § 53, and Id. 702, § 30.
That § 30 (p.. 702) creates a statutory definition of the word felony, for the mere- purpose of attaching to it a precise and definite meaning whenever found in any statute of the State, and not for the purpose of affecting the rights of property of third persons, growing out of any bona ficHe dealings between them and their vendors, in relation to property obtained by the latter, by acts which- were not a felony at common law, but which might be such under this statutory definition.
That under a just construction of the two sections cited, the obtaining of goods by false pretences is- not a felony within the definition of the word given by the- statute that the obtaining of goods by false pretences is not declared' by 2 R. S.. 677, § 53, to be a felony, nor is the word felony to- be found in that section, nor in the article containing that section. That although the offender may be punished by imprisonment in a state prison not exceeding three years, yet he may be imprisoned in a county jail only, and for less than- one year, and may be punished merely by the imposition of a fine.
The section defining the word “felony” reads thus:
“ The term ‘ felony,’ when used in this act, or in any other statute, shall be construed to- mean an offence for which the offender, on conviction,, shall be-liable by law to be punished by death or by imprisonment in- a state prison” (2 R. S. 702, § 30).
Tire revisors’ note- to> the section states, that “ the term felony originally imported an offence for which the offender forfeited his fief, his lands and tenements, goods and chattels (4th Black. *387 94). Such forfeitures have long been abolished, and the term has really no signification in our law. It is frequently used in statutes, and it is therefore desirable to give it a definite meaning. The definition proposed is conformable to the common understanding” (3d R. S., 2d edit., p. 836-7).
Does the term, as defined in § 30, mean an offence for which the offender, on conviction, must necessarily be punished by imprisonment in a state prison, or is it enough that he is liable to be so punished, although the punishment may, in fact, be only a fine ?
If sentenced merely to pay a fine, is he rendered incompetent as a witness, under § 23 of 2 E. S. 701. If sentenced to imprisonment in a state prison, does that section render him incompetent? Whatever may be the sentence, it is pronounced “ upon a conviction of having obtained property by false pretences.” The offence, in the case supposed, is necessarily a felony or no felony, irrespective of the degree or character of the punishment that may be actually adjudged, or else it depends upon the sentence that may be pronounced, and not upon ' the nature of the offence alone, whether it is to be the one or the other, with the resulting consequences? If it depends upon the sentence, then one obtaining goods by false pretences must be convicted and sentenced before it can be known whether he obtained them by felony within the statutory definition of the word.
- If sentenced to imprisonment in a state prison, is the person ' who was defrauded of his property by the false pretences, a creditor of the convict under 2 E. S. 700, § 14?
I think the definition of the term “ felony” found in the statute, was enacted for the mere purpose of giving it a definite meaning when found in statutory law, and without any design of affecting by it the rights or liabilities of third persons, resulting from ordinary and bond fide business transactions between them, and any one who may have obtained the property to which the transactions relate, by acts which were not a felony at common law, but which, by the revised statutes, may possibly be an offence, coming within their definition of a felony.
Petit larceny was a felony at common law, under the statu *388 tory definition it is not; being punishable by imprisonment in a county jail not exceeding six months, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment. Accordingly it was held in Carpenter v. Nixon, that a person who had been convicted of petit larceny was a competent witness; that, though still a felony at common law, it was not so by statute, and that the statute declaring a person convicted of a felony incompetent to be a witness, excluded only such as were guilty of the offence as defined by the statute; that this word, in the disqualifying section (2 E. S. 701, § 23), was used as defined by § 30, p. 702; and therefore the offender was competent, though convicted of an offence which was a felony at common law (Carpenter v. Nixon, 5 Hill, 260; and see Ward v. The People, 3 Hill, 395).
Conceiving that the question is not affected by the revised statutes, it remains to be considered how it should be determined on principle and authority.
There is no question that a vendor who has been induced by false pretences, within the meaning of those terms as used in the revised statutes, or by fraud not indictable, may reclaim the property from the fraudulent vendee.
But when a question of right or title arises between the vendor and a bond fide purchaser from the fraudulent vendee, an entirely different case is presented, and other considerations are to be taken into account. Hence it has been held that when the owner of property is induced to sell it, though by fraud, and actually delivers possession of it, intending at the time to then part with his title to it, a bond fide purchaser from the fraudulent vendee will hold it against the defrauded vendor. In such a case one of the persons must suffer, the original vendor or the last purchaser. Either the party who has actually consented to sell and deliver his property, and has delivered it with intent to part with his title, dr the one who has bought it in good faith from the person to whom such sale and delivery were made.
Mowry v. Walsh, 8 Cowen, 238, is in point, and if the settled law of this State is in conformity with the rule it adjudged, it is decisive of this question.
In deciding the., latter case, the court seem to have been *389 much influenced by the decision in Parker v. Patrick, 5 T. R. 175. In Parker v. Patrick, a pawnee of goods, which had been obtained from the defendant, the true owner, by fraud and false pretences, recovered their value, notwithstanding the defendant had procured the offender,.who pawned them to the plaintiff, to be indicted and convicted.
The plaintiff’s counsel insists that Parker v. Patrick is discredited by the subsequent decision of Peer v. Humphrey (2 Ad. & Ellis, 495), and that the latter establishes the doctrine that the right of an owner to reclaim his property from third persons is the same, whether it was taken from him by acts amounting to felony at common law, or by false pretences. The only thing said in Peer v. Humphrey, by way of questioning Parker v. Patrick, is this remark of Lord Denman : “ Another difficulty arises from the case of Parker v. Patrick, 5 T. R. 175. There, indeed, the court distinguished between fraud and felony ; but in the argument for the present defendant it is denied that such distinction can be taken ; if so, the decision in that case was incorrect. And if the question of goods fraudulently obtained were before us, I cannot help thinking that the case of Parker v. Patrick would not bear examination. • The Earl of Bristol v. Wilsmore, 1 B. & C. 514, seems to me quite inconsistent with it.”
It is difficult to see what inconsistency there is between Parker v. Patrick and the Earl of Bristol v. Wilsmore. The plaintiff, in the latter case, was not a purchaser from, or paw-nee, in good faith, of the offender. But he was a sheriff, and as such had seized the property on an execution against the wrong-doer. The latter acquired no title as against the defendant, the true owner, and the sheriff, by merely levying on his interest, acquired no equity superior to the legal title of the true owner, but, on the contrary, stood solely upon the title of the wrong-doer. Again, it is to be observed that Parker v. Patrick was decided while the act of 21 Hen. 8, c. 11, was in force, and was put on the ground that that statute gave an absolute right of restitution to an owner who had been deprived of his property by felony, on prosecuting the offender to conviction, but gave no such right to one who had been deprived of it by false pretences, which offence was not a felony. Before Peer *390 v. Humphrey arose, the 21st of Hen. 8, c. 11, had been repealed by statute of 7 and 8 G. 4, c. 27, § 1. The statute of 7 and 8 G. 4, c. 29, § 57, substituted other enactments as to restitution, and gave the right to one whose goods had heen obtained by fraud, on prosecuting the offender to conviction. The case of Peer v. Humphrey was one of larceny, and therefore was clearly distinguishable from Parker v. Patrick; and if what Avas unnecessarily said of the latter, was said without adverting to the fact, that the statutes in force at the time the two cases were decided, were essentially different, there is nothing in the remark to shake the decision in Parker v. Patrick.
In White v. Garden et al., 5 Law and Equ. R. 379, the case of Parker v. Patrick was approved by the judges of the Court of Common Pleas, who thought it sustainable on the ground that the contract, though induced by false pretences, was not absolutely void, but only voidable at the election of the first vendor, who might affirm it and sue upon it. That unless he avoided it, before the property had passed into the possession of one who had bought or advanced upon it, without notice of the fraud, his title would be divested, as between him and such purchaser, or the person so advancing (see Lord v. Green, 15 Mee. and W. 216).
In Rowley v. Biglow, 12 Pick. 307, 312, the court say: “We taire the rule to be well settled, that where there is a contract of sale, and an actual delivery pursuant to it, a title to the property passes, but voidable and defeasible as between the vendor and vendee, if obtained by false and fraudulent.represénta■tions. The vendor therefore can reclaim his property as against the vendee, or any other person claiming under him and standing upon his title, but not against a lana fide purchaser without anotice of the fraud. The ground of exception in favor of the latter is, that he purchased of one having a possession under a contract of sale, and with a title to the property, though defeasible and voidable on the ground of fraud ; but as the second purchaser takes without fraud, and without notice of the fraud of the first purchaser, he takes a title freed from the taint of fraud (Parker v. Patrick, 5 T. R. 175). The same rule holds iib regard to real estate.” “ The difference between the case of ¡property thus obtained, and property obtained by felony, is *391 obvious. In the latter case, no right either of property or possession is acquired, and the felony can convey none.” (Hoffman et al. v. Noble et al., 6 Met. 68).
It may be contended, with much force, that when a person obtains property by false, pretences, he acquires no right either of property or possession, and the false pretences can convey none. That such a party may be sued in trespass de bonis asportatis, or by replevin in the cepit, without a previous demand (Carey v. Hotailing, 1 Hill, 311, and ed. 317, ed. 302).
I think it a more accurate statement of the rule which protects a bond fide purchaser from- a fraudulent vendee, to say, “ that where there has been a contract of sale and a delivery under it, sufficient in law to vest the property in the first purchaser, and make a good title, if not tainted with fraud, the bond fide vendee of such a purchaser, buying and obtaining possession before the contract has been rescinded, will acquire a perfect title as against the first vendor.”
So if the true owner has intrusted to a third person written evidence of title, or of an absolute and unqualified power of disposition, any one who advances his money to and obtains possession of the property from such third person, in good faith, relying on the facts being in conformity with this written evidence of their truth, will acquire an indefeasible title as against the true owner. In the case of a sale, the. property is sold and delivered with an actual intent, that the purchaser may sell or otherwise convert it to his own use. A third person buying and taking a delivery of the property from the first purchaser, does only what the first vendor actually expected would be done by some one in respect to the property. He has enabled his vendee, and intended to enable him, to sell and deliver the property to others, who might bond fide part with their money and take the property in entire confidence of acquiring a perfect title. If in such a case the first vendor can afterwards rescind the sale and treat it as absolutely void as between himself and such a purchaser, then every bond fide purchase of chattels may be avoided by any former owner from whom they may have been obtained by a fraud, .which would avoid the sale as between him and his immediate vendee. Ho one could buy chattels with security of acquiring a title, even in the cases in *392 which a former owner had made a sale in fact, and a delivery under it with intent to then pass the title, if it should subsequently appear that he had been induced by fraud to sell and deliver them., When goods have been stolen or taken by an actual trespass, or have been delivered’ for a special purpose without any authority to sell, a different principle applies. In the first two cases supposed, the owner never made any delivery of the property, nor gave any actual or constructive assent to it. He never intended to part with the title or possession, in any event. He has done nothing which could aid the efforts of the felon or trespasser to defraud third persons. It is not a case m which his acts have enabled a third person to commit- a fraud, by which one of two persons equally innocent of any actual bad faith must suffer. In the case last supposed, he parted voluntarily with the possession. It is true that the only difference between that case, and the case of a sale and delivery of goods not accompanied by a bill of sale, or a bill of parcels, with payment receipted, so far as third persons can ascertain the truth of the transaction from appearances only, is hardly perceptible. In either case, the only evidence of title which the possessor of the property has or can exhibit, is the fact of actual possession. In either case, a person wishing, or solicited to purchase, sees him in the actual possession, claiming to be owner. Why, then, should a vendee acquire a title, if it turns out that possession was acquired under a fraudulent purchase, and none where it was obtained for a special purpose, and without any authority to sell in any event ?
It is difficult to find any principle on which to discriminate between them, except that above stated. The cases already cited, as well as numerous others, protect the bona fide purchaser on that principle. The rule is briefly and clearly, and, as we think, correctly stated in the recent case of Stevenson v. Newman, 16 Law and Eq. R. 401,408. “ The fraud only gives a right to rescind. In the first instance, the property passes in the subject matter. An innocent purchaser from the fraudulent possessor may acquire an indefeasible title to it, though it is . voidable between the original parties. It must be considered therefore as established, that the fraud only gives a right to avoid a contract or purchase; that the property vests until *393 avoided, and that all the mesne dispositions to persons not parties-to, or at least not cognizant of) the fraud, are valid.”
■See Colton et al. v. Gage et al., 13 Illinois E. 610, 614; McMahon v. Sloan, 2 Jones, 283 ; Kensbivry v. Smith, 9 N. H. 109.
Assuming the defendants, Ward & Price, to have advanced their money in good faith, we are of opinion that the plaintiff had no right against them to require the bill of lading to be endorsed and delivered to him, except upon the terms of paying what they had so advanced; all they could be required to do was to endorse and deliver the bills of lading to the plaintiff ; this they offered to do on being paid their expenses. The plaintiff offered to pay, and tendered to them the amount of their advances on condition of their giving him the manual possession of the goods; such possession he demanded of them, and clearly he had no right to require this. The defendants, Ward & Price, cannot be charged with the value of the goods for not complying with this demand. They offered to do all they had the power to do, viz. to give him all the evidence of title, and all the actual title, with all the consequent power of disposition and control which they possessed.
As there was no objection made to the competency or sufficiency of the evidence given in relation to the general usage for the master to issue a bill of lading to the person in possession of the shipping receipts, and as no counter evidence was offered, we consider it as assumed and conceded at the trial, that the usual and known course of business corresponded with the usage relied upon ; its existence seems to be recognised by adjudged cases. (Craven et al. v. Ryder, 6 Taunt. 433; Ruck v. Hatfield, Barn. & Ald. 632 ; Jones Shealf v. Bradner et al. 10 Barb. S. C. 194; Abbott on Shipping, 5th Am. ed. 321, 347, marginal paging; and see Bank of Rochester v. Jones, 4 Comst. 496.)
The Harbecks were not under any obligation by reason of the offer made to them or to the master by the plaintiff, and the accompanying demand to unload the goods. Keyser himself put the goods on board to be transported to California. Eeceipts imposing that obligation on the master had been taken by the plaintiff. Bills of lading had been issued in good faith by the master, and were in hands of persons who had bond fide *394 advanced on the goods. Without returning the bills of lading, and paying or fully indemnifying the vessel against the expenses of loading and unloading, and the damages to which her owners might be subjected by the delay unavoidably consequent upon unloading, neither the owners nor the master were in fault for not giving up the goods. This the plaintiff did not offer to do ; he neither tendered nor offered to procure and return the bills of lading, nor was it at any time in his power to return them. He offered, at most, merely to pay the expenses of unloading; he did not offer to pay the expenses of stowing the cargo, nor damages consequent upon the delay that would be caused by unloading.
Whether he would be obliged to pay, in addition, full or any freight, it is unnecessary to decide. There was no offer to pay.freight, although the captain insisted he was entitled to it; the captain was at least entitled to his freight or to be paid the expenses of stowing the cargo and of unloading it, and to full indemnity against the damages which would result from delaying the voyage until this part of the cargo could be taken out of the vessel, and to have the bills of lading restored to him.
Neither was tendered. No cause of action was primá fade established against the Harbecks.
From the manner in which the cause was submitted to the jury, it is quite evident that the plaintiff’s counsel did not suppose that there was any evidence on which he could anticipate a verdict, that the defendants, Ward & Price, did not advance in good faith, nor that there was any use to have that question submitted. We do not think that the evidence discloses a knowledge on their part of any facts or circumstances which make it proper to grant a new trial for the purpose of having that question submitted.
The verdict being subject to the opinion of the court upon the questions of law arising upon the evidence, and that being of a character to justify specific instructions to the jury upon' all the questions of fact, except the one specially found; and the liberty being resumed to the court to order a nonsuit, and that disposition being a just one, according to the case presented to us, a judgment of nonsuit must be entered.