## BELL *v.* CAFFERTY.

PROMISSORY NOTES—WARRANTY.—The person who sells promissory notes, whether by endorsement or delivery without endorsement, warrants them to be genuine and not forgeries.

CONTRACTS—SALE—FRAUD.—Where a person sells personal property, and the vendee pays therefor by transferring to the vendor forged promissory notes, knowing them to be forged, such sale will not be rendered absolutely void by such fraud, but only voidable.

CONTRACTS—RESCISION OF.—In such case, whether the fraud amount to a crime or not, the vendor, being himself innocent, still has the right to avoid or affirm the sale, upon the discovery of the fraud, so long as the property remains in the possession of the vendee, or a purchaser from him with notice.

SAME—SALE.—But, where there has been a sale, and delivery under it, sufficient in law to vest the property in the first purchaser, and make a good title, if not tainted with fraud, the *bona fide* vendee of such purchaser, buying and obtaining possession before such contract has been rescinded, will acquire a perfect title against the first vendor.

Bell *v.* Cafferty.

APPEAL from the *Miami* Circuit Court.

WORDEN, J.—Replevin by *Cafferty* against *Bell* for a mare. The cause was submitted to the Court on an agreed statement of facts, upon which statement the Court found for the plaintiff, and rendered judgment accordingly.

The defendant, having taken the proper steps to present the question involved, appeals. The following are the facts as agreed upon:

"Before and on the 17th day of *August*, 1863, the plaintiff was the owner of, and in possession of the mare in controversy; that on said day one ——— *Stewart*, who professed to be an agent for an *Illinois* insurance company, came to the plaintiff and proposed to purchase the mare in controversy, and offered him in payment four several promissory notes, amounting in the aggregate to 90 dollars, which notes were on responsible men, living within a few miles of the plaintiff, in *Cass* county, *Indiana*, whom the plaintiff personally knew, and which notes are not yet due; that the plaintiff in good faith, and believing said notes to be good and genuine, accepted said offer, which said notes said *Stewart* represented as good and genuine, sold said mare to said *Stewart* and took said notes in payment, and delivered said mare to said *Stewart*, intending thereby to part with the ownership thereof. *Stewart* took the mare, on the evening of the same day, to *Peru*, 18 miles distant from the place of purchase, and on the next day, in the streets of said town of *Peru*, after offering her for sale to divers persons, sold her to the defendant, *Bell*, who was ignorant of any fraud practiced on plaintiff by *Stewart*, for 60 dollars in cash; and who purchased and paid for said mare in good faith, believing he was getting a good title to her, and without notice of any fraud, or of any defect in *Stewart's* title; that *Stewart* gave as a reason why he wished to sell the mare, that he resided in *Elkhart*, and that he was sick and unable to ride her to that place, and that if he could

Bell *v.* Cafferty.

sell her he would take the cars for home; that *Stewart* left on the first train after the sale, and has not since been heard from; That said plaintiff received said notes in payment for said mare, on *Monday*, and on the following *Thursday*, for the first time, called upon the payers of said notes, when he learned that they were forged and of no value whatever; that he came to *Peru*, found the mare in the possession of the defendant, and demanded her of him before the commencement of this suit; that she is in the possession of the plaintiff at this time, having been delivered to him under the writ of replevin, &c., and that she is of the value of 80 dollars. It is further agreed that the notes are forgeries and of no value; that the plaintiff never saw *Stewart* after the sale of the mare to him, and that the defendant, *Bell*, purchased her from *Stewart* in good faith, for a valuable consideration, and without notice of the fraud."

In our opinion, the finding and judgment of the Court below, should have been for the defendant instead of the plaintiff. The ground of this opinion will be stated.

It may be observed, as a preliminary remark, that it does not appear from the agreement whether *Stewart* was a party to the notes which he transferred to the defendant, and whether he indorsed them; or whether he transferred them by delivery merely. But whether he indorsed them, or transferred them by delivery merely, he warranted them to be genuine, and not forgeries. 2 Parsons on notes and bills, pp. 588, 589, 600. It may also be further remarked, that it does not appear, (unless it be by inference,) that *Stewart* knew that the notes were forgeries. But for the purpose of putting the case in the strongest light for the plaintiff below, we will assume that he did. It may be that, if *Stewart* was ignorant that the notes were forged, the contract of sale would have been voidable by the plaintiff, on the ground of a total failure of the consideration therefor; but on that supposition, the

proposition that the sale, if voidable, was not absolutely void, and that the plaintiff might have affirmed it, and sued *Stewart* for the price of the mare, or the amount of the notes, is so clear that we shall not further discuss it. *Sharp* v. *Jones,* 18 Ind. 314.

If *Stewart* knew that the notes were forged, it is very clear that the fraud practiced by him in transferring them to the plaintiff in payment for the mare, rendered the contract of sale voidable, if not absolutely void. But we are of opinion that the fraud only rendered the contract voidable, and not void.

The plaintiff might, notwithstanding the forgery, have affirmed the sale, and sued *Stewart* for the purchase money. It was at his option either to avoid, or to affirm the contract of sale. Suppose *Stewart* had paid for the mare in counterfeit bank notes, knowing them to have been counterfeit, it can not be doubted that the plaintiff might have affirmed the sale, and sued him for the price of the mare. The fact that the mare was paid for in forged notes against individuals, does not seem to vary the case. "If a party," says *Mr. Parsons,* "who gives a bill, knows at the time that it is of no value, the holder may, when he discovers the fraud, sue the party on his original liability; or if the bill be given for goods, the sale being tainted with fraud, on the part of the vendee, the vendor may consider it void, and retake his goods without breach of the peace, or maintain replevin or trover for them; or he may affirm the sale and sue for his purchase money." 2 Pars. on notes and bills, 206.

Indeed it may be stated as a general principle of law applicable to contracts, to be found running through all the books, that fraud renders a contract voidable and not void; that it is at the option of the party upon whom the fraud is practiced to avoid or affirm the contract. If he chooses to do so, he has the undoubted right to affirm the contract, notwithstanding the fraud practiced upon him.

Bell *v.* Cafferty.

But it is urged that inasmuch as *Stewart* committed a felony in transferring the notes to the plaintiff, knowing them to be forged, no title passed by the sale any more than if *Stewart* had stolen the mare from the plaintiff. If *Stewart* had stolen the mare from the plaintiff, he could not, of course, by a sale to the defendant, have conferred any title upon him. But *Stewart* acquired the mare by means totally distinct from, and utterly inconsistent with the idea of a larceny, viz: By a purchase of her from *Cafferty*, and a delivery of her to him by *Cafferty*, with intent to part with his title.

"Where a vendor has acquired possession of property wrongfully, and without the knowledge, connivance, or assent of the owner, as where he has stolen or found them, or holds them merely as bailee, with no express or implied authority to sell, the original owner may reclaim them from the hands of a subsequent *bona fide* purchaser for a valuable consideration." 2 Story on cont., sec. 851, B.

But when one has purchased property and received possession from his vendor, the latter intending by such sale and delivery to pass the title, an entirely different rule prevails. Fraud on the part of the vendee, we have seen, authorizes the vendor to avoid the sale, but does not render it absolutely void; and it seems to us to make no difference in principle, whether the fraud be innocent, in a criminal sense, or whether it be punishable as a crime.

We have seen that if *Stewart* did not know that the notes were forged, the contract of sale was voidable merely; in such case *Stewart* committed no crime. It seems to be an absurdity to say that *Cafferty's* right of affirming the sale, depends upon *Stewart's* knowledge, or want of knowledge, of the character of the paper; that if *Stewart* did not know that the notes were forged, *Cafferty* might affirm the sale, but if *Stewart* had such knowledge, *Cafferty* could not affirm it, because *Stewart* had committed a crime.

If the sale to *Stewart* were absolutely void, whereby no title whatever passed, it is utterly incapable of confirmation or ratification. *The State* v. *The State Bank*, 5 Ind. 353; *Trueblood* v. *Trueblood*, 8 Ind. 195.

It seems to us, on principle, that whether the fraud of the vendee amount to a crime or not, the vendor, himself being innocent, must have the option of avoiding or affirming the sale. But on this point, the authorities fully sustain the view we take. Thus, in *Mowry* v. *Walsh*, 8 Cow., one *Stevens* had presented to the plaintiff a forged paper, purporting to be signed by *Isaac Bishop*, mentioning *Stevens* as a person who wished to purchase cotton goods, as one who might be safely trusted, and assuming to pay whatever amount the plaintiff might supply him with. On the strength of this forged paper, the plaintiff sold *Stevens* goods, which he afterwards sold to another person. It was held, notwithstanding the forgery, that the person thus purchasing the goods from *Stevens*, could hold them as against the plaintiff. So also, in the cases of *Malcom* v. *Loveridge*, 13 Barb. 372, and *Keyser* v. *Harbeck*, 3 Duer 373, it was held that where one purchased goods under such false pretenses as were punishable under the *New York* statute, as a felony, the sale was not void, but voidable only at the option of the vendor, and that a purchaser in good faith from the vendee, would hold them against the original vendor.

It may be conceded, for the purposes of this case, that it was a rule of the common law that where a party possessed himself of property by means of a felony, he thereby acquired no title, and could confer none upon his vendee. But while that was a rule of the common law, it was also a rule that forgeries, obtaining goods under false pretenses, and other frauds of that description, were not felonies. "Forgery," says *Blackstone*, "may with us be defined at common law, to be the fraudulent making or alteration of a writing, to the

Bell *v.* Cafferty.

prejudice of another man's right; for which the offender may suffer fine, imprisonment, and pillory." 4 Sharswood's Black. 247. The crime of forgery was not a felony, any more than was the obtaining of goods under false pretences, as it did not involve a forfeiture of goods, which was an inseparable incident to felony. *Id.* p. 96. Hence, there never was any rule of the common law, that a party who had acquired goods by a sale and delivery to him although such sale and delivery may have been induced by forgery or false pretences on his part, acquired no title which he could convey to a third, innocent, person.

The common law rule, both in its reason and spirit, assumes that a person who has acquired goods by means of a felony, has acquired them by other means than a purchase from the owner, and a delivery by the owner, with intent to part with his title.

We think it may be safely asserted that, at common law, where a man sells and delivers goods, with intent to part with his title, although the sale may have been induced by forgery, false pretences, or other fraud, on the part of the vendee, the sale will be good, at the option of the vendor.

But the legislature have, by statute, made both forgery and the obtaining of goods under false pretences, felonies.

How shall these statutes be construed? Shall they be held to affect those only who are guilty of the offences, or shall they be construed to affect the rights of third persons growing out of contracts? We think, on the most obviously just principles, these statutes should affect those only who are guilty of the offences named. They should not be held to either abridge or enlarge the rights of third persons, who are innocent of any wrong. In short, they should not be held to make a contract void, so far as innocent parties are concerned, which was only voidable at common law.

*Stewart,* then, when he purchased and received possession

of the mare, acquired a defeasible title to her, the contract of sale not being absolutely void. That title might be rendered absolute, or totally defeated, at the option of *Cafferty.*

This brings us to the question, which has been in some measure anticipated, whether, under the circumstances, *Bell,* the defendant, acquired a valid title to the mare, as against the plaintiff, by his purchase from *Stewart?* It is conceded by the agreement that *Bell* purchased in good faith, without notice of the fraud, and for a valuable consideration.

It is sometimes said that a vendor of chattels, (the English law of market overt not being adopted in this country,) can convey to his vendee no better title than he himself has. This proposition is by no means universally, though it may be generally true. The proposition applied to the case before us, would defeat the defendant's title; for if he stands in *Stewart's* shoes, with no better title than he had, the defeasibility of that title still continues; and the plaintiff, having signified his election to avoid the contract, by demanding the property, would be entitled to recover.

But cases like the present are not embraced in the general proposition stated; or perhaps it would be more correct to say that they are exceptions to that general rule. We think, both on principle and authority, the law will give to a party standing in the position of the defendant, a valid title as against a party standing in the position of the plaintiff.

Either the plaintiff or the defendant must lose the mare. Upon whom should the loss fall? The plaintiff sold and delivered the mare to *Stewart,* intending to part with his dominion over her. He gave *Stewart* the *indicia* of ownership, and thus enabled him to perpetrate a fraud on the defendant, unless the latter can hold the property. Both the plaintiff and defendant are innocent of any wrong; but as the plaintiff, by his own act, enabled *Stewart* to perpetrate a fraud upon the defendant, it would seem but right that the loss should

Bell *v.* Cafferty.

fall upon him, on the "broad general principle that where one, of two innocent persons, must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." Broom's Max. p. 456. But we pass to the authorities bearing directly upon the question.

It is laid down that, "a party who obtains the goods from the fraudulent purchaser, without notice of the fraud, in the usual course of trade,—that is who gives value for them, makes advances upon them, incurs responsibilities upon them, or receives them in pledge for money or property loaned upon the strength of them,—may hold the goods against the vendor, being a *bona fide* purchaser." 2 Hilliard on Torts, p. 147.

Again it is laid down by an elementary writer, that where a party "has voluntarily parted with his property or goods, and given a title therein to the vendee, he can not reclaim them from a third party, who has become a purchaser from such vendee, for a valuable consideration, without notice on the ground of fraud by his own vendee; for although fraud renders the contract voidable, it does not render it *ab origine void*. And, therefore, as the original owner has voluntarily parted with the goods, and given to his vendee a title which is good until it is avoided, it is through his own act that the vendee is enabled to resell, and a *bona fide* purchaser without knowledge of the circumstances, ought not, therefore, to suffer." 2 Story on Cont., sec. 851 c.

Some of the cases fully sustaining the doctrine will be referred to. The case of *White* v. *Garden,* and another, 5 Eng. L. and Eq. R. 379, is much like the present in its facts. There, one *Parker* had purchased some iron of the defendants, for which he paid in accepted bills. He gave to the defendants a false address, and represented that the acceptor of the bills was a seedsman in *Rochester;* whereas, no such person could be found. *Parker* had sold the iron to the plaintiff. The

plaintiff was held to be entitled to the iron on the ground that the original contract was good at the option of the defendants; and after the plaintiff had purchased the iron from *Parker,* the defendants could not set up the fraud practiced by him.    To the same effect are the cases of *Stevenson* v. *Newman,* 16 Eng. L. and Eq. 401; *Kingsford* v. *Merry,* 34 *id.* 607; *Jennings* v. *Gage,* 13 *id.* 610; vide note 1 to 2 Kent Com. p. 694, 10th ed.    The case of *Load* v. *Green,* 16 M. and W. 216, may be cited as bearing upon the question.

In the case of *Rowley* v. *Bigelow,* 12 Pick. 307, 312, the Court, after stating the proposition, that a vendor can not recover the property from one who has in good faith purchased of a fraudulent vendee, say: "The ground of exception in favor of the latter is, that he purchased of one having possession under a contract of sale, and with title to the property, though defeasible and voidable on the ground of fraud; but as the second purchaser takes without fraud, and without notice of the fraud of the first purchaser, he takes the title freed from the taint of fraud."

In *Caldwell* v. *Bartlett,* 3 Duer. 341, the Court lay down the following propositions, in support of which numerous authorities are cited: "One who tortiously possesses himself of another's goods, without a delivery from, or the consent, express or implied, of, the true owner, can vest no title even in a *bona fide* purchaser.    But when the owner delivers possession of chattels, intending at the same time to part with his property in them, any one *bona fide* purchasing them from the person to whom they were so delivered, will obtain a title valid as against the first owner, though he may have been induced to sell and deliver them by fraud and false pretences, which would authorize him to disaffirm the contract, and reclaim them from the person to whom he delivered them."

In *Keyser* v. *Harbeck, supra,* the Court lay down the rule as follows: "Where there has been a sale and delivery under

it, sufficient in law to vest the property in the first purchaser, and make a good title, if not tainted with fraud, the *bona fide* vendee of such purchaser, buying and obtaining possession before such contract has been rescinded, will acquire a perfect title against the first vendor." This seems to be as clear and as accurate a statement of the law on the subject, as any we have found in the books.

In *Titcomb* v. *Wood*, 38 Maine, 561, it was held, that a sale of property, in exchange for that which is stolen, is not *ipso facto* void, but voidable at the option of the vendor; but that he could not hold it against a purchaser in good faith from the vendee. There are other cases, to the same effect, running through the books, but we shall not extend this opinion, which has already become prolix, by bringing them together.

*Per Curiam.*—The judgment below is reversed, with costs, and the cause remanded.

*N. O. Ross* and *R. P. Effinger*, for the appellant.
*H. J. Shirk* and *Lyman Walker*, for the appellee.