## LOGAN COUNTY BANK v. FARMERS' NAT. BANK OF OKLAHOMA CITY.

No. 6263.   Opinion Filed February 15, 1916.

(155 Pac. 561.)

1. **MUNICIPAL CORPORATIONS—Municipal Warrants—"Commercial Paper."** Municipal warrants possess none of the attributes or qualities of commercial paper, save the capacity of being transferred by delivery or assignment.

2. **STATES—State Warrants—Sale—Implied Warranty.** Where the vendor sells to the vendee warrants purporting to be drawn upon a special fund, there is an implied warranty that the warrants so sold are what they purport to be; that is, valid existing obligations against the state.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by the Farmers' National Bank of Oklahoma City against the Logan County Bank. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. G. Hornor*, for plaintiff in error.

*Keaton, Wells & Johnston*, for defendant in error.

Opinion by RITTENHOUSE, C. The Farmers' National Bank of Oklahoma City brought this action against the Logan County Bank to recover upon four purported state warrants in the sum of $1,000 each, together with interest. It is alleged in the petition that defendant agreed to sell to plaintiff, and plaintiff agreed to buy, warrants of the State of Oklahoma in the sum of $7,551.63, and accrued interest; that, in pursuance of such contract, the defendant delivered to plaintiff certain instruments in writing purporting to be valid, genuine, and unpaid warrants

of the State of Oklahoma, which instruments in writing the defendant represented and therefore guaranteed to be genuine and valid warrants, for the payment of which the State of Oklahoma was liable; that plaintiff relied upon such representations and guaranty, and received and accepted said instruments in good faith, believing the same and each of them to be genuine and valid obligations of said state; and that the contract price was paid.   Copies of the purported warrants were attached to the petition. It is further alleged that such warrants are not good, valid, and genuine obligations of such state, but are bogus, invalid, and fraudulent warrants, and the State Treasurer refuses to pay the same on the ground that they are fraudulent and void; that said pretended warrants were issued by some of the officers or employees in the office of the State Auditor, but that no claim or voucher was ever filed, presented, or allowed as a basis for the execution of said warrants, the same being issued without consideration, in violation of law, and being false, fraudulent, and void, which was unknown to the plaintiff at the time of the purchase; that said pretended warrants are not what plaintiff agreed to buy of defendant; that to the extent and amount of such pretended warrants, the defendant has not delivered and transferred warrants of the state as it agreed to do, and said warrants are tendered into court.   A demurrer was filed, on the ground that the petition did not state facts sufficient to constitute a cause of action, which demurrer was overruled; and the cause brought here on the sufficiency of the petition.

The warrants in question purport to be issued to J. H. Connell for expenses and supplies of the Agricultural and Mechanical College at Stillwater, out of the funds appropriated for such purposes by House Bill No. 336, and the

law under which such purported warrants were issued is section 8616, Comp. Laws 1909 (section 8066, Rev. Laws 1910), which is as follows:

"All accounts and claims against the state, which shall be by law directed to be paid out of the treasury thereof, shall be presented to the Auditor, who shall examine and adjust the same, and for the sums which shall be found due from the state, shall issue warrant payable at the state treasury.    *    *    *"

The gist of the allegations of the petition is that these warrants were not issued upon claims as provided by the foregoing section, and that therefore there was no consideration for their issuance. The dispute arising here is between the vendor and vendee as to the extent of the obligation of the warranty resulting from the sale of such warrants. The first question presented is: Are such warrants commercial paper? This must be answered in the negative. Municipal warrants possess none of the attributes or qualities of commercial paper. The holder stands in the shoes of the payee. His rights and remedies are essentially different from those of the holder of negotiable paper, and the rights of the holder of such paper are subject to the same legal and equitable defenses as in the hands of the payee. *Jack v. National Bank of Wichita,* 17 Okla. 430, 89 Pac. 219. In the second paragraph of the syllabus of that case it is held:

"Municipal warrants or obligations possess none of the attributes or qualities of commercial paper, and the holder of such warrants or obligations, even when payable to bearer or order, stands in the shoes of the payee."

And this is supported by the great weight of authority. Dillon on Municipal Corporations (5th Ed.), vol 2, par. 856, says:

"The question whether there is any implied power in the officers of a town, county, or city corporation to issue warrants or orders which shall be free from equities in the hands of holders has been disposed of by a long line of decisions which denies to these warrants or orders the principal attribute of negotiability, viz., freedom in the hands of *bona fide* transferees from equities in favor of the municipality. This result is arrived at as much by reason of the purpose or object intended to be attained by these instruments as by a consideration of the lack of power, inherent or implied, on the part of municipalities to make and issue negotiable instruments without clear statutory authority therefor. Such warrants or orders, drawn for ordinary municipal expenses, are not intended to have the qualities of commercial paper, but are instruments authorized for convenient use in conducting the current and ordinary business of the corporation and as a means of anticipating its ordinary revenue. It would overwhelm municipalities with ruin to hold that such warrants or orders have the qualities of negotiable paper, especially that quality which protects an innocent holder for value from defenses of which he has no notice, actual or constructive. All holders of such warrants or orders, even when payble to order or bearer, stand in the shoes of the payee and their rights and remedies are often essentially different from those of the holders of authorized negotiable municipal bonds. Such is the sound doctrine. and such is the doctrine of the authorities without exception."

The same authority, under section 858, says the capacity of being transferred by delivery or assignment is the only negotiable characteristic which the courts concede to municipal warrants; that warrants payable from a specific fund are deprived of negotiability by reason of the fact that their payment is dependent upon the sufficiency of the fund, and such warrants do not constitute an absolute and certain promise to pay.

There is no contention but that the warrants were sold to the Farmers' National Bank as legal obligations of the State of Oklahoma. The question is: Does the sale of these warrants in law imply a warranty of identity? That is, is there a warranty that the thing sold is what it purports to be, or does such a sale only imply a warranty that the thing sold belongs to the seller and is not a forgery? The cases relied upon by the plaintiff in error *(Otis v. Cullum, Rec'r,* 99 U. S. 447, 23 L. Ed. 496, and *Orleans v. Platt,* 99 U. S. 676, 25 L. Ed. 404) lay down the rule that the vendor of such securities is liable *ex delicto* for bad faith, and *ex contractu* there is an implied warranty on his part that they belong to him, and are not forgeries. Where there is no express stipulation, there is no liability beyond this. But those cases are based upon the fact that the things sold were negotiable securities which passed by delivery from hand to hand, and thereby became a part of commerce; as, for example, in the case of *Cooke v. United States,* 91 U. S. 389, 23 L. Ed. 237, wherein the court held that certain treasury notes, having been issued fraudulently or surreptitiously, nevertheless entered largely, and at once, into the commerce of the country in lieu of money, and on the principle that they were commercial paper the government was not allowed to recover. But this is not the condition with which we have to contend. In the instant case, the things sold were warrants issued for the expenses of the Agricultural and Mechanical College at Stillwater. They were not commercial paper. The only negotiable characteristic which they possessed was that they might be transferred by delivery or assignment, and the case of *Otis v. Cullum, supra,* and those cited in support thereof, have no application to this class of paper. The implied warranty is to

be determined from the nature of the contract. In the case at bar, the vendor, the Logan County Bank, sold to the Farmers' National Bank of Oklahoma City these warrants purporting to be drawn upon a special fund, and in doing so they impliedly warranted the identity of the thing sold; that is, they impliedly warranted that ·the· warrants so sold were what they purported to be. Would the delivery of the warrants issued without authority of law comply with the contract to deliver valid existing obligations of the State of Oklahoma? We think not. The vendee was entitled, under his contract, to have warrants that were valid existing obligations against the state. The delivery of purported warrants, not issued upon claims properly ·filed ·and allowed, · does· not discharge the obligation of the vendor, for the vendee is entitled to receive, not invalid warrants, but the valid existing warrants of such state. This being true, it is only necessary for us to look to the allegations of the petition to see if they are sufficient to charge that the purported warrants so sold were not the valid and genuine warrants of the State of Oklahoma. It is alleged in the petition:

"Plaintiff alleges that said pretended warrants and each of them were issued by some of the officers or employees in the office_of the Auditor of the State of Oklahoma (the name or names of whom are to plaintiff unknown) at the date of ·the pretended issue, and that no claim or voucher was ever filed, presented, or allowed as the basis for the execution of said warrants, or either of them, but the same were issued without consideration, in violation of law, and are false, fraudulent, and void, all of which was unknown to the plaintiff at the time it purchased said pretended warrants. * * *"

The only authority which the State Auditor had to issue these warrants was section 8616, Comp. Laws 1909 (section 8066, Rev. Laws 1910), which gave him the authority to issue such warrant upon the filing of an account or claim presented to him, and it then became his duty to examine and adjust the same, and, for the sums which he found due from the state, to issue warrant payable at the state treasury. This petition alleges that no claim was filed, presented, or allowed as a basis for the execution of such warrants; and if none was filed, presented, or allowed, he was without authority to issue the warrants, and any so issued are invalid. When these warrants were sold, the Logan County Bank warranted that they were the genuine warrants of the State of Oklahoma, based upon proper claims and a good and sufficient consideration. This seems to be the rule in most of the jurisdictions of the United States. A very thorough discussion of the subject is found in *Meyer et al. v. Richards*, 163 U. S. 385, 16 Sup. Ct. 1148, 41 L. Ed. 199, in which the leading cases of France, England, and America are discussed and liberally quoted from, supporting the theory herein announced, and in which the syllabus reads:

"An implied warranty of the validity of state bonds as existing obligations arises on a sale of such bonds having the genuine signatures of state officers and the seal of the state thereon, and appearing on their face to be valid, and which are believed by both parties to the sale to be valid, but which have been stricken with nullity by the Constitution of the state.

"An implied warranty of identity of the thing sold, which arises at common law on the sale of goods and chattels, applies on the sale of commercial paper without indorsement or without express assumption or liability on the paper itself."

And in the body of the opinion the court says:

"None of the authorities referred to by counsel for defendant in error sustain the proposition heretofore stated with reference to the supposed existence and applicability of the law merchant, and the results which it is claimed flow therefrom. On the contrary, both in England and in the United States the doctrine is universally recognized that, where commercial paper is sold without indorsement or without express assumption of liability on the paper itself, the contract of sale and the obligations which arise from it, as between vendor and vendee, are governed by the common law, relating to the sale of goods and chattels. So, also, the undoubted rule is that in such a sale the obligation of the vendor is not restricted to the mere question of forgery *vel non,* but depends upon whether he has delivered that which he contracted to sell; this rule being designated, in England, as a condition of the principal contract, as to the essence and substance of the thing agreed to be sold, and in this country being generally termed an implied warranty of identity of the thing sold."

In the case of *South Bend Iron Works v. Paddock et al.,* 37 Kan. 510, 15 Pac. 574, it is said that one who indorses a nonnegotiable note transfers the title and guarantees the note to be genuine, and that it is what it purports to be. It does not guarantee its payment. In the case of *Rogers v. Walsh,* 12 Neb. 28, 10 N. W. 467, it was held:

"The plaintiff bought of the defendants what she supposed were, and what purported to be, the warrants of York county, but which, having been issued by the county commissioners of that county without authority of law, were void and of no value. Action to recover the price paid. *Held,* that the pretended warrants were not a valid consideration for the money paid therefor, and that the plaintiff was entitled to recover it back."

See, also, Daniel on Negotiable Instruments (6th Ed.) vol. 1, sec. 670; 7 Cyc. 813, 830; *Bell v. Cafferty,* 21 Ind. 411; *Flynn v. Allen,* 57 Pa. 482; *Terry v. Bissell et al.,* 26 Conn. 23; *McClure v. Central Trust Co.,* 165 N. Y. 108, 58 N. E. 777, 53 L. R. A. 153; 3 Ency. of U. S. Sup. Ct. Reports, 342.

We therefore conclude: (1) That municipal warrants possess none of the attributes or qualities of commercial paper, save the capacity of being transferred by delivery or assignment. (2) That where the vendor sells to the vendee warrants purporting to be drawn upon a special fund, there is an implied warranty that the warrants so sold are what they purport to be; that is, valid existing obligations against the state. (3) That the petition states facts sufficient to constitute a cause of action, and the demurrer was properly overruled.

The cause should therefore be affirmed.

By the Court: It is so ordered.