[Civ. No. 3645. Third Appellate District.—November 30, 1928.]

ABRAHAM SPIEGELMAN, Plaintiff and Appellant, v. GEORGE A. EASTMAN, Defendant and Appellant.

206

Samuel Horowitz and W. W. Kaye for Plaintiff and Appellant.

William A. Barnhill and Lewinson & Barnhill for Defendant and Appellant.

PLUMMER, J.—This cause is before the court upon an appeal by the defendant from the judgment entered therein in favor of the plaintiff, and also upon an appeal by the plaintiff from an order granting a new trial after judgment. If the order granting a new trial was properly made, the judgment from which the defendant has appealed falls of its own weight. On the contrary, if the order granting a new trial should be reversed, it follows as a matter of course that the judgment should be affirmed.

This cause was heard before the Honorable T. A. Norton, sitting with a jury, and verdict rendered in favor of the plaintiff. Thereafter, a motion for new trial was heard and determined by Honorable Hartley Shaw, and granted on the ground of insufficiency of the evidence, and on the further ground of newly discovered evidence, and though, as held in the cases of *Jones* v. *Sanders*, 103 Cal. 678 [37 Pac. 649], and *Garton* v. *Stearn*, 121 Cal. 347 [53 Pac. 904], the same presumptions attach to the order made by Judge Shaw that would have attached to the order granting a new trial if made by Judge Norton, yet, if any one of the causes of action relied upon by the plaintiff is established without any substantial conflict in the testimony, the order granting a new trial on the grounds of insufficiency of the evidence cannot be sustained.

The action was begun by the plaintiff to recover the sum of $26,600 as the unpaid portion of the purchase price of an apartment house sold by the plaintiff to the defendant. By the terms of the sale the defendant agreed to pay to the plaintiff the sum of $47,000, as follows: $16,500 cash, $26,600, by assigning the note to one Philips, secured by chattel mortgage; $1,250, by assigning a chattel mortgage on certain machinery, and $2,650, by the personal note of the defendant, payable on or before six months.

The only item involved in this action is the $26,600 represented by the Philips note and chattel mortgage. The face of the Philips note was for $28,000, dated April 26, 1924, and payable at the rate of $350 per month until January 26, 1926, and at the rate of $1,100 per month thereafter. The apparent face of the note and of the installments ac-

cruing after September, 1924, the date of the sale by the plaintiff to the defendant of the apartment house referred to, amounted to $26,600. The Philips note was secured by a chattel mortgage covering furniture in a certain building known as the Victoria Hotel. The same mortgage also secured a note, set out in the chattel mortgage, for the sum of $12,000, signed by Jack E. Philips and Mrs. Olive Philips. The note involved in this action was signed only by Jack E. Philips. At the time of the execution of the $28,000 mortgage on the twenty-sixth day of April, 1924, and also at the time of its transfer by the defendant to the plaintiff, the property mortgaged was covered by two prior mortgages, one given to secure the rent of the hotel at the rate of $1,350 per month, and the second given to Mr. and Mrs. Troutman in the sum of $15,000, and hereinafter referred to as the Troutman mortgage. The defendant guaranteed the payment of the first $5,000 to be paid by Philips on the $26,600 note. This, by a separate instrument. The note itself was transferred by the defendant without recourse. The note dated April 26, 1924, given as hereinbefore stated, in the sum of $28,000, bore upon the reverse side thereof the following indorsement: "Paid May 26, 1924, $350; paid June 26, 1924, $350; paid July 26, 1924, $350; paid interest to July 26, 1924, $499; paid August 26, 1924, $350." Apparently reducing the amount due on the note to the sum of $26,600, and showing apparent installment payments and an interest payment in the aggregate sum of $1,890. These installments, however, were not in fact paid, the defendant simply taking from Jack E. Philips an unsecured promissory note for $1,400 and indorsing upon the note an interest payment of $490, without the receipt of either cash or promissory note. In other words, as appears further in the transcript, the interest was simply marked off, or in the language of one of the parties, "forgiven."

Without taking into consideration the rental agreed to be paid by Jack Philips for the Victoria Hotel, which called for the payment of $1,350 per month, the record shows the following indebtedness of Jack Philips and the liens against the personal property, furniture, goodwill, etc., including leasehold interest of the Victoria Hotel:

First: A mortgage to secure the payment of the monthly rental accruing on the lease;

Second: A mortgage to George D. Troutman and Lucille C. Troutman, in the sum of $15,000;

Third: An encumbrance in the form of lease-contract in the sum of $10,500;

Fourth: A furniture contract, introduced as "Exhibit B," calling for the payment of $300 per month, with eight per cent interest for seven months, and thereafter, $500 per month for five months, bearing interest at eight per cent;

Fifth: A certain other encumbrance due the Baker Linen Company, for $875. These items aggregate the sum of $20,475, excluding the lease-contract of $10,500, which, together with the two notes included in the mortgage given, in part, to secure the $28,000 note, show a total indebtedness of $60,475. The testimony of the defendant, as well as the testimony of some other witnesses, was to the effect that the furniture, leasehold interest and goodwill of the Victoria Hotel was of the value of, and would sell for, about $45,000. It does not appear that Jack E. Philips had any other property than that covered by the liens and mortgages herein referred to.

The complaint is in three counts. In the first cause of action set forth in the complaint the plaintiff seeks to recover from the defendant the sum of $26,600 and interest, on the grounds of fraud, to wit: That the defendant made certain fraudulent representations as to the value of the note, and that the plaintiff was thereby induced to accept the same as part payment on the purchase price of the Ambassador Hotel. The second cause of action is based upon the implied warranty of the defendant, by reason of the qualified indorsement on the note, to wit: that he had no knowledge of any fact which would impair the validity of the instrument or render it valueless. The third cause of action is based upon mistake, in that it is alleged that the plaintiff accepted the $26,600 note under the mistaken view or understanding that Jack Philips, the maker thereof, was solvent, that he had no information, and no information was given to him of anything which would tend to show his insolvency, and also under the mistaken understanding that Olive Philips, the mother of the defendant, had signed the $28,000 note.

█ In the consideration of the issues presented upon this appeal the testimony as to the first and second causes of action set forth in the complaint overlap, yet there is a clear distinction between what is required to prove the first cause of action and the testimony necessary to sustain the second cause of action. In addition to what we have hereinbefore stated, the record shows that immediately after acquiring the $28,000 note hereinbefore referred to, the defendant placed the same in the hands of a broker named Odell, to be by him disposed of. Odell was given information as to the amount due on the note, but was given no information as to the installment payments thereon having been marked as paid without being paid, nor was he given any information as to the marking off of the interest due on the note by an indorsement thereon indicating that the interest had been paid. The first offer to the plaintiff to purchase the Ambassador Hotel and include the note in part payment therefor, was made by Odell on behalf of the defendant, in which offer it was represented that there was then due on the $28,000 note the sum of $26,950. This offer was not acceptable, and thereafter, on or about the tenth day of September, 1924, an offer was made which was acceptable to all parties, and in this offer the amount due on the $28,000 note was, in co sideration of the indorsements thereon, figured at $26,6( ). The assignment of the note and mortgage stated the balance due on the $28,000 note to be $26,600. The record shows that the $12,000 note secured by the same chattel mortgage as the $28,000 note was signed by Mrs. Olive Philips as well as by Jack E. Philips, and that Mrs. Philips was reputed to be a very wealthy woman, thus giving additional strength and security for the payment of that note. This note, however, was not included in the assignment to the plaintiff. The defendant testified, in substance, that he made no special effort to collect the installments falling due on the $28,000 note; that he had given no consideration to the insolvency of Philips and thought that he would be able to work out of his difficulties; that the scare over the hoof-and-mouth disease prevalent during the latter part of 1924 had lessened the tourist travel and interfered with the apartment house business. The record, however, shows that the financial condition of Philips, known to the defendant, was such as to

lead unerringly to the conclusion that Philips, at all times after giving the $12,000 note and the $28,000 note on April 26, 1924, was insolvent. Section 3450 of the Civil Code, relating to assignments for the benefit of creditors, defines an insolvent in the following language: "A debtor is insolvent within the meaning of this title when he is unable to pay his debts from his own means as they become due." While the maker of the $28,000 note had not made any assignment for the benefit of his creditors, and, therefore, this section of the code is applicable only as a definition, yet the situation presented is exactly parallel with the one described in the code as testified to by the defendant, the business Philips, the maker of the note, was conducting did not yield sufficient revenue to enable him to make the payment of the installments as they came due on his indebtedness. The record shows that, including the security given to cover the lease, there was an indebtedness of over $70,000, almost one-half of which was prior in point of time to the mortgage held by the defendant, and more than half of which was prior to the $28,000 note assigned to the plaintiff, and at the same time, the property securing the indebtedness was valued at about $45,000, including the leasehold interest, goodwill and all that went to make up the business. This shows the payment of the installments could not be enforced or obtained out of any means belonging to Philips by reason of the prior liens. It is true the defendant testified that the indorsements made on the $28,000 note, indicating that installments thereon had been paid when nothing had been paid, was not done with intent to defraud, but this testimony has little or no weight in view of the fact that parties holding secured notes do not, in the ordinary course of business, waive the security, mark off the interest due, and take an unsecured note representing only a portion of the amount credited on the back of the secured instrument. Being directly contrary to the usual course of business, and no other explanation having been given than that herein referred to, only one conclusion can be reached from the transaction under consideration, and that is a purpose to give to the $28,000 note an apparent value which it did not possess; likewise, to give to the maker thereof an apparent ability to pay the installments on the notes as they became due, which he did not possess. The $28,000 note was in the

hands of a broker for sale, and its transfer or commercial value depended directly upon the payment of the monthly installments specified therein. While we are setting forth these matters primarily in relation to the second cause of action contained in the plaintiff's complaint, we see no escape from the further conclusion that the defendant was seeking by this subterfuge and concealment of the true situation to pass a worthless piece of paper on to some uninformed person, and thus gain something for nothing, an act which is expressly denounced by the third clause of section 1710 of the Civil Code, which describes deceit as follows: "The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Here, the apparent information was that the installments accruing had been paid. The concealment consisted in the fact that instead of receiving payment, the defendant had taken an unsecured promissory note for the unpaid installments, and had written off the interest due. If that does not also amount to a fraud upon an uninformed purchaser of such a note, we do not understand the meaning of the word. What we have said relates to uncontradicted testimony, and establishes the first cause of action, were it not for the technical defect, if it be a defect in this case, of the omission of one question and one answer in the record, to wit: A question as to whether the plaintiff relied upon the record representations as shown thereby, and an answer thereto that he did. We do not need to decide whether, when the fraud consists in deceit or concealment, such testimony of reliance thereon is necessary to make out a case of fraud. The uncontradicted testimony in this case and what we have hereinbefore set forth brings this case so clearly within the second cause of action set forth in plaintiff's complaint that we do not need to dwell at length upon either the first or the second cause of action. ■ The $28,000 note was transferred by a qualified indorsement and, therefore, carries with it the warranty created by law. Section 3146 of the Civil Code reads: "Every person negotiating an instrument by delivery or by a qualified indorsement warrants— 1. That the instrument is genuine and in all respects what it purports to be; 2. That he has a good title to it; 3. That all prior parties had capacity to contract; 4. That he has

no knowledge of any fact which would impair the validity of the instrument or render it valueless." And section 1774 of the same code reads: "One who sells or agrees to sell an instrument purporting to bind anyone to the performance of an act thereby warrants that he has no knowledge of any facts which tend to prove it worthless, such as the insolvency of the parties thereto, where that is material, the extinction of its obligations, or any invalidity, for any cause." Turning to section 3146 of the Civil Code, the act of the defendant directly violated the first subdivision thereof, where it says that "such an endorser warrants that the instrument is genuine and in all respects what it purports to be." For the purposes of this discussion it may be admitted that the instrument was genuine, but it was not in all respects what it purported to be. The instrument purported to be one upon which $1,890 had been paid in installments and in interest, whereas in truth and in fact, not one cent had been paid. By the code section referred to the defendant likewise warranted that he had no knowledge of any fact which would impair the validity of the instrument or render it valueless. This, again, was directly violated by the defendant, who knew that he was unable to collect the installments accruing upon the note. He knew that the maker of the note, as shown by the record which we have recited, was absolutely financially unable to meet the installments, and that the maker of the note had no property whatever out of which the installments could be realized by legal proceedings. Turning to section 1774 of the Civil Code, we find that the defendant violated the warranty that he had no knowledge of any facts which would tend to prove the instrument worthless, such as the insolvency of the parties thereto. This latter is given only as an illustration, but in this particular case it applies, because the defendant did not know, from what we have set forth and shown, that he could not have avoided knowing, of facts which tended to prove the paper worthless, such as the example given in the code provision, the insolvency of the maker of the note, the fact that the maker of the note was mortgaged for almost twice the value of property he possessed, and that the property possessed was not bringing sufficient income to enable Philips to meet the accruing installments due on his indebtedness. The record shows

that subsequent to the transfer to the plaintiff of the note involved in this action, foreclosure proceedings were begun against Philips on the prior liens mentioned in this opinion, but is not considered as bearing upon any issues presented for determination. While a qualified indorsement on a promissory note relieves the indorser from the position of a security for its payment, it does not open the door for the transfer of worthless paper. As said in 19 California Jurisprudence, page 882, section 70: "One who exempts himself from liability as an indorser by using the expression 'without recourse,' or its equivalent, does not stand freed from all obligation with respect to the indorsement. His liability to subsequent parties is precisely the same as the liability of a transferor to his transferee, where the instrument is negotiated by delivery only. An indorsement 'without recourse' still leaves the indorser liable as a vendor with the following warranties: That the instrument is genuine and in all respects what it purports to be; that the indorser has a good title to it; . . . and that the indorser has no knowledge of any fact which would impair the validity of the instrument or render it valueless." Section 1774 incorporates, also, the warranty that the transferor has no knowledge of anything which would tend to show the insolvency of the payer. Likewise, as said in *Carroll* v. *Nodin,* 41 Or. 412 [69 Pac. 51, 93 Am. St. Rep. 743] : "On an indorsement 'without recourse,' there is an implied warranty by the seller that the paper is what it purports to be, and that no payments have been made, except those which appear to be indorsed thereon, and that such as so appear are genuine and operate to continue the obligation in force as against the Statute of Limitations." As we have shown herein, the indorsement appearing upon the notes transferred to the plaintiff are not genuine; they are simply fictitious indorsements made thereon to give the note a fictitious value. While an indorser, "without recourse" does not warrant the solvency of the maker, he does warrant that he possesses no knowledge which would indicate insolvency on the part of the maker, or to use a different expression, that he does not know of anything which would tend to indicate that the payer of the note would be unable to make payment, which is equivalent to insolvency, where one is unable to pay his debts and has no means out of which payment can be

obtained, as the record conclusively shows in this case. In support of what we have here stated we may further refer to the case of *State Exchange Bank* v. *National Bank of Commerce*, 70 Okl. 234 [2 A. L. R. 211, 174 Pac. 796], and the extended note following in said case. There is likewise a distinction to be drawn between fraud and warranty. This distinction is best shown by quoting the language of the text found in 22 California Jurisprudence, 960: "While the fact that the defendant acted with superior knowledge is the gist of the action, whether it be one on the case for false representation, or upon contract, for breach of warranty, there is, in theory at least, a plain distinction between fraud and warranty in respect to the degree of the defendant's knowledge. ██ To support the action for deceit, the plaintiff must prove that the defendant was aware of the falsity of his statement, or, at any rate, that he spoke with a conscious lack of knowledge as to the truth, whereas, to the maintenance of an action for breach of warranty, it is not essential to show that the seller consciously misstated the fact as to the quality, fitness or value of the goods or thing; the plaintiff need only establish an assumption by the seller of superior knowledge as to the fact—a state of mind which is perfectly consistent with good faith or a belief in the truth of the statement. In short, fraud or deceit is proved by the fact that the defendant knew the statement to be false, whereas, breach of warranty is established by proof that he ought to have known that it was erroneous."

In support of the contention that the same rules apply as to pleading, practice and testimony in cases of implied warranty where the warranty is created by law, that applies to actions based upon fraudulent misrepresentation, and that the plaintiff must show by testimony not only that the representations were made, but that he relied upon them, the defendant cites the case of *Crocker-Woolworth National Bank* v. *Nevada Bank*, 139 Cal. 564 [96 Am. St. Rep. 169, 63 L. R. A. 245, 73 Pac. 456]. An examination of that case, however, shows that it is inapplicable, as it was based upon representations, and not upon an implied warranty or warrant created by law; and this is true in relation to the case of *Goings* v. *White*, 33 Ind. 126, cited in *Crocker-Woolworth National Bank* v. *Nevada Bank, supra,* in support of the language

there used, which, if the distinction is not carefully made between fraudulent representations and warranties created by law, would lead to the conclusion that the case holds there is no distinction between the two. The case of *Pepper* v. *Vedova*, 26 Cal. App. 406, 409 [147 Pac. 105], draws the distinction which we are here making, and, likewise, refers to the case of *Spreckels* v. *Gorrill*, 152 Cal. 383 [92 Pac. 1011], where the same subject is considered, showing a distinction between fraudulent representations and warranties which enter into and become a part of the contract by reason of the code provisions which we have heretofore cited. Again, as said in 35 Cyc., page 368: ''There is a definite distinction between representation and warranty, although it is sometimes difficult to determine whether a given statement is the one or the other. A representation is an antecedent statement made as an inducement to the contract, but not a part of or an element in the contract, whereas a warranty becomes, by agreement, a part of the contract. The untruthfulness of the representation, unless material or fraudulent, will not affect the contract. On the other hand, in the case of a warranty, it is immaterial whether the seller knew his statements were untrue or not. A statement is none the less a warranty because it is false and fraudulent. In the case of a warranty, however, the rights of the purchaser rest in contract, while in the case of representation and fraud they are based on tort.'' In the case at bar the rights of the purchaser of the note in question rest upon contract. He took the note with certain warranties written into it by operation of law. These warranties, as we have just stated, constituted a part and parcel of the contract, and when the plaintiff, suing upon the contract, established a breach thereof, by uncontradicted testimony, a case was made out which necessitated a verdict in favor of the plaintiff. Any other verdict would have been contrary to both the law and the facts. This being true, the order of the trial court granting a new trial on the ground of insufficiency of the evidence is without support. One cause of action set forth in the plaintiff's complaint being thus established, and no question being raised as to the correctness of the instructions given by the court to the jury, the verdict should stand. While it is alleged that the court erred in refusing certain proffered instructions, no argument is made and nothing set

forth in the briefs to show in what particular the court erred, and while under the circumstances we are not compelled so to do, we have examined the refused instructions and find no cause of complaint on the action of the trial court in refusing the same, or in instructing the jury as to the issues involved in this action. It is unnecessary for us to consider further either the first or the third cause of action set forth in the plaintiff's complaint, for the simple reason that if one cause of action is properly made out and sustained, as we have stated the plaintiff is entitled to recover.

In relation to the subject of newly discovered evidence, the law is well summarized in 20 California Jurisprudence, page 77, section 55, as follows: ''To entitle a party to a new trial on this ground it must appear that the evidence, and not merely its materiality is newly discovered; that the evidence is not cumulative, merely; that the evidence is something as to render a different result probable, on a new trial; that the party seeking relief could not, with reasonable diligence, have discovered and produced the evidence at the trial.'' The affidavits in support of the motion for new trial fall short of any of these requirements. The witnesses whose testimony is claimed to constitute newly discovered evidence are named as J. E. Philips, Mrs. Phoebe Philips, E. A. Odell, and F. J. Easley. The record shows that of these witnesses, J. E. Philips, mentioned in the record as Jack Philips, and E. Odell, testified repeatedly during the course of the trial. The examination of both witnesses was very exhaustive. They testified as to all of the subject matter embraced in the recitals contained in the affidavits. Mrs. Phoebe Philips is the wife of Jack Philips, and her presence at the conversation related by her in her affidavit was repeatedly testified to by the witnesses Jack Philips, Olive Philips, and the plaintiff. The remaining witness, F. J. Easley, was a clerk at the hotel kept by Jack Philips, and reference to him is made in the testimony of Jack Philips. It is thus shown that all of the witnesses whose testimony is now claimed to constitute newly discovered evidence were known to the attorneys for the defendant; that two of them were on the witness-stand and were examined at length; that the conversation constituting the newly discovered evidence purports to be a conversation

which took place at the very instant of time mentioned in the testimony of Jack Philips wherein he refers to a visit of the plaintiff to the Victoria Hotel at a time preceding the tenth day of September, 1924. The record contains an affidavit, on the part of the plaintiff, showing that the conversation referred to in the affidavit, had with the plaintiff, occurred after the transfer of the note and mortgage when the plaintiff subsequently visited the Victoria Hotel. Be that as it may, the record shows that the attorneys for the defendant and the defendant himself knew all the parties who were present in the Victoria Hotel; that their names were mentioned; that the conversation supposed to have been had with the plaintiff and Philips was detailed by Philips, and now it is sought to add thereto additional testimony as to the conversation referred to, when the defendant and his counsel made no attempt whatever, so far as the record shows, to ascertain whether they had brought out in full the entire conversation had between the plaintiff and Philips relative to the Victoria Hotel. The affidavits seek now to introduce testimony that during said conversation Philips stated in substance to the plaintiff that he was not meeting his installment payments. This would touch the question of fraud, but not the question of warranty. It would extend this opinion to too great a length to review the testimony of the different witnesses and review the alleged newly discovered evidence, but the record shows that the defendant is resting his case upon the statement that he and his counsel did not know of the testimony, and made no attempt whatever to show any effort to discover all the claimed facts relative to the conversation now sought to be made the basis of a motion for new trial. Where no effort is shown to have been made to produce the alleged newly discovered evidence, and where the record shows that if any effort whatever had been made, all of the alleged facts might have been ascertained, no foundation is laid for the granting of a new trial on the ground of newly discovered evidence.

It follows from what we have said that the order granting a new trial in this cause must be, and the same is, hereby reversed, and the judgment affirmed.

Hart, J., and Finch P. J., concurred.