[Civ. No. 8642. First Appellate District, Division Two.—February 17, 1933.]

In the Matter of the Estate of ALFRED FRY BROAD, Deceased. LOUISE M. BROAD, Appellant; WELLS FARGO BANK AND UNION TRUST COMPANY, as Executor, et al., Respondents.

Milton Marks for Appellant.

Francis V. Keesling, Garton D. Keyston and Harry G. McKannay for Respondents.

STURTEVANT, J.—After the death of Alfred Fry Broad his holographic will was admitted to probate. Thereafter his surviving widow, Louise M. Broad, filed a petition to revoke the probate of the will and two days thereafter Ethel Broad Jackson, a daughter by a former marriage, filed a similar petition. After issue joined a trial was had and findings were made against the petitioners. From the judgment duly entered on said findings the surviving widow has appealed.

She contends that the evidence establishes that the deceased was possessed of insane delusions as to her character, fidelity and financial possessions and that he made a harsh, cruel and unnatural will as a result of these delusions. Therefore she asserts that the findings are not supported by the evidence. At the time of making his will the decedent was about sixty years of age. He had been married twice. By his first wife he had a daughter, Ethel, one of the petitioners above named but who has not appealed. Whether his first wife died or he was divorced from her has not been called to our attention. However, it appears that in 1922 he married Louise M. Broad, the other petitioner. Prior to their marriage Mrs. Broad had been the secretary and manager of the decedent in his business, which was that of a photographer and printer. She had accumulated at that time $4,000, or more, and had it on deposit in savings accounts. At the time of his death the decedent had accumulated $20,000, or thereabouts, which was his separate property. He wrote the will July 30, 1924.

In support of their petitions the contestants introduced evidence tending to show that the decedent was under the delusion that individuals unknown were attempting to rob him and to poison him; that he was under the delusion that his wife was not true to her marriage vow, and that she was mercenary and quarrelsome; that he was under the delusion his wife was amply provided for by properties which she

owned in her own right or by reason of certain expectancies; and that his sister, one of the defendants, was in poor circumstances. The defendants introduced evidence tending to show that the opinions entertained by the decedent were not insane but were founded, at least in part, on existing facts. In support of their case the petitioners called thirteen witnesses as intimate acquaintances and each testified as to his opinion as to the mental sanity of the decedent. Some of those witnesses based their opinions on events not closely related in point of time to the date of the execution of the will. Some of them gave evidence as to the relations that existed between the decedent and his wife. Much of that evidence was negative, that is, it was to the effect they had never heard the wife quarrel with her husband. The petitioners also called one alienist and propounded to him a long hypothetical question. In reply that witness testified that the decedent at the time he executed the will was suffering from paranoic psychosis. On cross-examination the witness frankly admitted that if certain facts assumed in the hypothetical question were not shown by the evidence his opinion would be otherwise. The defendants called two intimate acquaintances. One, Mr. Howe, had known the decedent for many years, had done a great deal of business with him, and the two met frequently at lunch and their communications one to the other were very intimate. The other witness, Mr. Maddux, had also known the decedent many years, had frequently visited at his home, and had camped with him on many occasions on hunting and fishing excursions which lasted from one to six weeks. The matters discussed by the two extended over a wide range of subjects. Both of these witnesses testified the decedent was of sound mind when they first knew him and that there was no change in that condition. That the decedent was an eccentric person appeared from the testimony of several witnesses, but the most that can be said regarding the evidence is there was a conflict. By no means may it be said there was not some evidence to support the findings.

It is also claimed the trial court erred in denying petitioners' motion for a new trial. Our attention is directed to certain affidavits which are set forth in the clerk's transcript. It will suffice to state that the record does not disclose that the affidavits were called to the attention of

the trial court. However, it should also be stated there was no showing on the part of the petitioners that, before the trial, they had exercised ordinary diligence to obtain the evidence set forth in said affidavits. Failure to make that showing is fatal to a motion for a new trial. (*Spiegelman* v. *Eastman*, 95 Cal. App. 205, 217 [272 Pac. 761].)

The order is affirmed.

Spence, Acting P. J., and Goodell, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1933.