[Civ. No. 3392.   Third Appellate District.—January 17, 1928.]

C. A. BARRETT, Appellant, v. M. GORE et al., Respondents.

---

1.   See 9 Cal. Jur. 551.

Thos. L. Clay and Mark F. Jones for Appellant.

E. T. Lucey for Respondents.

THOMPSON, (R. L.), J., *pro tem.*—This is an appeal from a judgment of nonsuit which was granted in an action in *assumpsit*. The suit was brought to recover money paid for an undivided interest in an oil developing enterprise,

which unit the respondent Rosenberg sold and transferred to appellant in violation of the Blue Sky Law.

The defendants A. L. Gore, M. Gore, Adolph Ramish, and Barnett Rosenberg were the owners of equal undivided interests in a lease of oil lands at Long Beach, California, and an oil developing enterprise called the Lyceum Oil Syndicate. M. Gore held these property interests as trustee for the said owners. The organization was first considered a copartnership. The defendant Rosenberg testified as follows: "Q. Just what was said (to Mr. Barrett)? A. I told him it was only four partners, . . . and each one of us has got fifteen per cent,—and they are actually four partners in these properties, but I have got another silent partner. . . . Q. You told him it was a partnership? A. I told him it was a partnership. . . . Q. What did you say? A. We were four partners and we got a trust agreement between Mr. Ramish, Mr. Gore and myself." Mr. Hutton, attorney for defendants, also testified: "Q. November 25, 1922, and for three or four months prior to that date you were acting as attorney for what is known as the Lyceum Oil Syndicate? A. Yes. Q. Who were the members of that? A. M. Gore, Adolph Ramish, A. L. Gore and Barnett Rosenberg. Q. Do you know whether on or before that time the title to the property was held in trust? A. Yes sir (it was). Q. By whom? A. M. Gore. . . . Prior to November 25th, the interests of the several parties were equal, namely Mr. Rosenberg, . . . from the record that I have appeared to have 25 per cent; M. Ramish 25 per cent, and each one of the Gore boys 25 per cent."

November 29, 1922, these defendants formally executed and recorded an elaborate declaration of trust empowering them to hold and operate said properties for the purpose of sinking oil wells, developing and marketing the products thereof. It was provided that the trust estate should consist of 100 equal interests of the par value of $3,000 per unit. Gore Brothers, Inc., were declared to own 29 units; J. C. Gore, one-half of one unit; Israel Gore, one-half of one unit; Adolph Ramish, 15 units; Barnett Rosenberg, 15 units; York & Sullivan, 10 units, and the remaining 30 units were set apart to defray costs of operation and to pay royalties. The form of certificate for shares to be issued to the unit

holders was specified. The trustees named were authorized to sink wells, develop and market oil products and declare and pay dividends. The trust was to continue until 1932. Operations were commenced and a well was sunk to a depth of about 5,000 feet, and on May 15, 1923, it was abandoned as a "duster," or dry hole.

September 29, 1922, in consideration of the sum of $2,000, the respondent Rosenberg sold and conveyed to appellant's assignor George L. Symons an undivided one per cent of all products derived from the properties of said oil syndicate. This transfer was made "subject to all the terms . . . of that certain lease . . . assigned under date of September 5, 1922, to the Lyceum Oil Syndicate, and also subject to the trust agreement heretofore entered into by the undersigned with M. Gore, trustee. . . ." November 25, 1922, in consideration of the sum of $2,850 a similar one per cent unit of interest in the products of said syndicate was sold and conveyed to appellant by Rosenberg by an assignment couched in the same terms above specified. March 6, 1923, the respondent M. Gore wrote a letter to appellant requesting him to execute an inclosed form of reconveyance of said unit of interest to the syndicate, explaining that, "under the terms of the agreement, Mr. Rosenberg cannot, as an individual, assign any interest in the Lyceum Oil Syndicate, . . . (as said) certificate (is) not presumed to be a document other than a usual stock certificate. . . ." A postscript was added to this letter explaining the reason why Rosenberg had failed, in the first instance, to issue to appellant the usual prescribed form of certificate of the Lyceum Oil Syndicate. He said: "The error was not made on the part of Mr. Rosenberg, but was originally an error on the part of our attorney, who imagined . . . Mr. Rosenberg could execute such an assignment." Appellant promptly executed and returned the requested reconveyance, whereupon the Lyceum Oil Syndicate, on the date last mentioned, issued and delivered to appellant its certificate in lieu of the former assignment, for an undivided one per cent unit of interest in the products of the Lyceum Oil Syndicate. This certificate was signed by M. Gore, president, and B. Rosenberg, secretary of the syndicate, and was in the following form:

"Certificate

"Number 10        Lyceum Oil Syndicate        One Unit
"Los Angeles, California.                Capital, $300,000.

"This is to certify that Claud A. Barrett is the owner of One Unit, fully paid and non-assessable, for the par value of $3000 each, of the beneficial interest in the Lyceum Oil Syndicate, a business trust, transferable only on the books of the company by the owner thereof in person or by duly authorized attorney upon surrender of this certificate properly endorsed. This certificate is held subject to an agreement and declaration of trust dated November 29, 1922, and which is recorded in the office of the county recorder of Los Angeles County, California, in book 1775 at page 85. . . .

"Said declaration of trust provides: trustees shall at their discretion declare dividends when revenues from production of said wells shall justify, and such dividends shall be paid to the unit-holders in proportion to the respective number of units owned by each as shown by the books of the trustees. And no unit holder shall ever be personally liable for any debt, covenant, demand, contract or tort of any kind, of this company.

"Witness the signature of the trustees of said company this 6th day of March, 1923.

"LYCEUM OIL SYNDICATE,
"By M. GORE, Pres.
"Attest, B. ROSENBERG, Sec'y."

█ Upon a motion for nonsuit the evidence must be construed most strongly against the defendant. Every favorable inference fairly deducible, and every favorable presumption fairly arising from the evidence should be construed in favor of the plaintiff. If the evidence thus construed indicates that the plaintiff has proved a cause of action, or even where a trial judge is in doubt, and the evidence is susceptible of different constructions, the plaintiff should be given the benefit of the doubt and the motion for dismissal should be denied. (9 Cal. Jur. 551, sec. 35.)

█ It will be observed that the units of interest involved in this action were conveyed by assignment prior to the actual execution of the final declaration of trust under which the syndicate continued its operations. But these

assignments were made while the properties were being held in trust by the respondent M. Gore for the same oil mining purposes, and for the benefit of the same unit holders who then owned equal undivided interests. The organization was known by the same name of Lyceum Oil Syndicate, and the owners were actually engaged in sinking a well on their Long Beach property. They considered this temporary organization a copartnership, and contemplated an immediate consummation of a formal voluntary trust. Within a month of the first sale to Symons, and within four days from the sale to appellant the organization was merged into the voluntary trust association by the execution and recording of a formal declaration of trust. In every respect the former trust served the same purpose and imposed the same obligations required under the latter trust. The respondent Rosenberg held no individual negotiable shares, but possessed merely an undivided interest in the entire enterprise, whether it be termed a copartnership, association, trust, or company. The two units in question were evidently sold to participate in the profits of the oil mining enterprise. The specific share sold to appellant was so recognized and ratified as the act of the syndicate by the subsequent request for reconveyance, and by the formal issuing of a syndicate certificate over the signatures of the president and secretary thereof. This furnishes substantial evidence of a sale to appellant by the Lyceum Oil Syndicate of securities of an interest in its enterprise, which under the Corporate Securities Act was illegal and void, in the absence of a permit for such sale by the corporation commissioner.

It was stipulated that said Lyceum Oil Syndicate at no time held a permit from the corporation commissioner of California to sell or convey units, shares, or interests in its enterprise. It necessarily follows that these sales were illegal and void. (*Smith* v. *Bach*, 183 Cal. 259 [191 Pac. 14]; *Wallace* v. *Zinman*, 200 Cal. 585 [254 Pac. 946].)

The Corporate Securities Act, as enacted in the Statutes of 1917 at page 673, and subsequent amendments thereto, provides: "No company shall sell . . . or offer for sale . . . any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing

378

it so to do." (Sec. 3.) "Every security issued by any company, without a permit of the commissioner authorizing the same, then in effect, shall be void. . . . " (Sec. 12.)

■ It is not material whether at the time of the sale the vendor's organization constituted a partnership, voluntary trust, or association. All alike are prohibited from selling such securities without the written permission of the corporation commissioner. "The word 'company' includes all . . . private corporations, associations, joint companies, and partnerships of every kind, and also trustees as hereinafter defined." (Sec. 2, subd. 3.) "The word 'trust' . . . includes all voluntary trusts . . . expressly created by or declared in an instrument in writing. . . . " (Sec. 2, subd. 4.) "The word 'security' includes (a) all shares or other interests, or rights into which the capital stock *or property* of companies, or rights of stockholders *or members thereof* are divided. . . . " (Sec. 2, subd. 6a.) "A sale within the meaning of this act, includes every contract by which for a pecuniary consideration, called a price, one transfers to another an interest in property. . . . " (Sec. 2, subd. 7.)

■ An association of individuals operating under a declaration of trust by the terms of which the capital contributed by them to a common enterprise is divided into units or interests clearly comes within the definition of a "company" as it is defined by the Corporate Securities Act of California, and the sale of such units or interests, without a permit from the corporation commissioner is strictly prohibited. (*In re Girard,* 186 Cal. 718 [200 ·Pac. 593]; *Agnew* v. *Daugherty,* 189 Cal. 446 [209 Pac. 34]; *Boss* v. *Silent Drama Syndicate,* 82 Cal. App. 109 [255 Pac. 225].) Certificates of interests to be sold by the owner of a lease and option to purchase certain mining property, which lease and option had been conveyed by him to trustees under a trust empowering them to receive all payments for such interests and to hold the same as a trust fund for the holders of such certificates, was held in the case of *Agnew* ·v. *Daugherty, supra,* to constitute "securities" within the meaning of the Corporate Securities Act.

■ Money paid by a purchaser of units or shares in any company, under such void sale, may be recovered in an

action in *assumpsit,* as for money had and received. (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]; *Landwehr* v. *Lingenfelder* (Mo. App.), 249 S. W. 723, 727.)

For the foregoing reasons the judgment is reversed.

Hart, J., and Finch, P. J., concurred.