980 F.2d 737
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FLUNCH, S.A., Plaintiff-Appellant,
v.
PALO ALTO FOOD COMPANY, INC.; Louis Cherry; S.A.F.
(California), Inc., Defendants-Appellees.
 No. 90-56292.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 7, 1992.*
Decided Dec. 4, 1992.
 
 Before POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Flunch, S.A. (Flunch) appeals the district court's judgment in favor of Palo Alto Food Company, Inc. (Palo Alto) and Louis Cherry. The court held that Flunch breached a Stock Purchase Agreement with Palo Alto for the sale of shares of S.A.F. corporation and thus is not entitled to the remaining $187,000 due under the Agreement. We affirm.
 
 STATEMENT OF CASE
 
 3
 Flunch, a French corporation, owned S.A.F., a Delaware corporation doing business in California. On June 1, 1985, S.A.F. entered into a lease agreement as the lessee for unimproved property in San Diego. When construction on the unimproved lot did not progress, and the landlord failed to cure within thirty days, S.A.F. issued a notice of termination of the lease on December 31, 1985.
 
 
 4
 Subsequently, on December 22, 1986, Flunch entered into a Stock Purchase Agreement with Palo Alto and Louis Cherry, a California resident and sole shareholder, director, and officer of Palo Alto, for the sale of the stock of S.A.F. for a total purchase price of $475,000. Palo Alto issued a promissory note payable to Flunch in the amount of $225,000. Cherry executed a guaranty for the promissory note up to $100,000 plus interest.
 
 
 5
 Palo Alto sold all of the outstanding S.A.F. stock to Ray Bahrami in 1987. On January 19, 1988, the landlord under the 1985 lease with S.A.F. filed a lawsuit in San Diego Superior Court naming S.A.F. as the defendant. Segawa v. S.A.F., No. 594889 (Cal.Super.Ct.1988). The complaint alleged that S.A.F. breached the lease as of January 23, 1986 by failing and refusing to occupy the improved premises and by refusing to pay rent. Cherry was served with a copy of the summons and complaint. He notified Flunch's representatives of the suit and the fact that the lease was not mentioned in the Stock Purchase Agreement. Flunch received a copy of the summons and complaint in time to file an answer to the complaint. When Flunch refused to defend S.A.F., Cherry stopped making payments under the Agreement as of January 1988. On March 29, 1988, a default judgment was entered against S.A.F. for $558,014.65.
 
 
 6
 Flunch then sued Palo Alto and Cherry to recover the principal balance owed under the Stock Purchase Agreement--$187,000. After a trial, the district court found that as of the date of the default judgment "Palo Alto and Cherry were permanently excused from making payments by reason of Flunch's prior breach."
 
 DISCUSSION
 Breach of the Agreement
 
 7
 Flunch breached the Stock Purchase Agreement by failing to disclose the existence of the 1985 lease pursuant to section 2.05 of the Agreement. Section 6.01 of the Agreement states that the plain language of the Agreement governs. See also Cal.Civ.Code § 1638. Under section 2.05 Flunch warranted that it had listed:
 
 
 8
 all written agreements, contracts and leases to which the Corporation is a party, ... To the actual, present knowledge of Seller, the Corporation is not a party to, nor is the property of the Corporation bound by any existing written agreement ... which is materially adverse to the business, properties, or financial condition of the Corporation.
 
 
 9
 (emphasis added). On its face, the Agreement required Flunch to list all agreements that were presently existing at the time of the Agreement. Flunch warranted that the list was accurate.
 
 
 10
 The 1985 lease agreement did exist at the time of the Agreement. The Superior Court inevitably determined that existence when it ultimately issued a judgment against S.A.F. for the failure of the corporation to perform under that lease. Flunch's apparent argument that the lease agreement did not exist even though it generated a $558,014.65 judgment against S.A.F. is disingenuous. The obligation of a warranty is absolute, irrespective of the good faith of a seller. Mary Pickford Co. v. Bayly Bros., 12 Cal.2d 501, 520, 86 P.2d 102 (1939). Flunch's alleged good faith and its belief that the lease was terminated by the notice to the landlord is irrelevant to a determination that it breached its express warranty. Flunch did breach the Agreement by failing to disclose the 1985 lease agreement. It warranted, in effect, that no such lease agreement existed. Between the buyer and seller, Flunch bears the burden of that omission, since it issued the warranty. Therefore, Flunch cannot sue on Palo Alto's alleged breach of the contract when Flunch itself is in breach. See Pry Corp. of America v. Leach, 177 Cal.App.2d 632, 639, 2 Cal.Rptr. 425 (1960).
 
 Duty to Defend
 
 11
 Flunch did not breach the Stock Purchase Agreement by failing to defend S.A.F. in the San Diego litigation. Flunch had no contractual obligation to defend S.A.F. While there was an express indemnification provision for Palo Alto's representations, there was no corresponding indemnification provision for Flunch's representations. Flunch's warranty that all existing agreements were listed is not an indemnification provision. The implied covenant of good faith and fair dealing cannot create a duty to indemnify independent of the express terms and purposes of the contract. See Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc., 2 Cal. 4th 342, 373, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992); Restatement (Second) of Contracts § 205 (1981). Nothing in the terms of the contract required Flunch to defend or indemnify Palo Alto. Furthermore, Flunch had no authority to defend S.A.F. because the rightful owner, Ray Bahrami, did not tender the defense to Flunch. As of January 1988, the date of the filing of the San Diego lawsuit, Bahrami and not Cherry was the owner of the S.A.F. stock. Therefore, Flunch had no legal obligation to defend S.A.F. in the San Diego litigation.
 
 
 12
 However, the absence of a legal duty to defend S.A.F. does not change the fact that Flunch had notice of this litigation concerning the possible breach of its warranty, but chose to do nothing about it. Flunch knew it was in breach of its warranty and did nothing to aid S.A.F. in defending a claim under the lease agreement which Flunch now says did not exist, despite the fact that the Superior Court gave judgment against S.A.F. on that very lease agreement. Flunch cannot complain now of the default judgment that established that the 1985 lease agreement existed at the time of the Stock Purchase Agreement.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3